UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TAMMY BRISCOE                                                  CIVIL ACTION

VERSUS

ENERGY TRANSFER PARTNERS,                      NO.: 14-00433-BAJ-EWD
LP, ET AL.

## RULING AND ORDER

This matter is before the Court on cross motions for summary judgment filed
by each of the parties, with the exception of Defendant Southern Union Company.
(Docs. 74, 75, 76, 79). The Court has considered the respective oppositions and replies.
(Docs. 82, 83, 95, 96. 97, 99, 103, 104). For the following reasons, Plaintiff Tammy
Briscoe's (hereinafter, "Plaintiff") motion shall be denied and Defendant Energy
Transfer Partners, LP's, Defendant Florida Gas Transmission Company, LLC's,
Defendant Hartford Life Insurance Company's, and Defendant Metropolitan Life
Insurance Company's (collectively, "Defendants") motions shall be granted.[1]

I.   **Factual History**

This action arises from the death of Plaintiff's husband, Robert Briscoe
(hereinafter, "Mr. Briscoe"), and her inability to collect benefits under a group life
insurance policy he carried with his former employer. (Doc. 20).[2] From at least
sometime in 2010 until his involuntary termination on May 16, 2012, Mr. Briscoe was

---

[1] Defendant Energy Transfer Partners, LP and Defendant Florida Gas Transmission Company, LLC
filed a joint motion and a joint response. (Docs. 79, 99). Plaintiff's motion does not seek judgment
against Defendant Southern Union Company. (Doc. 74 at p. 1).

[2] This document will be referred to as the "Amended Complaint."

employed by Defendant Florida Gas Transmission Company (hereinafter, "FGT"). (Doc. 61 at ¶ 2).[3] While employed by FGT, Mr. Briscoe enrolled in and received, under the Florida Gas Transmission Welfare Benefit Plan (hereinafter, "the FGT Plan"), basic life insurance coverage of $70,000 and optional supplemental life insurance coverage of $210,000. (*Id.* at ¶ 3). The life insurance benefits provided by the FGT Plan were insured under a group policy issued by Defendant Metropolitan Life Insurance Company (hereinafter, "MetLife"). Plaintiff was the beneficiary of her husband's life insurance under the FGT Plan.[4] (*Id.* at ¶ 7).

On May 16, 2012, Mr. Briscoe was terminated from his employment with FGT; this date was also his last day of physically doing work. (*Id.* at ¶ 8). Mr. Briscoe's last paycheck was issued by FGT on June 1, 2012 for the period ending May 26, 2012, and was for 30.67 hours of vacation pay. (*Id.* at ¶ 9). The FGT Plan was cancelled by FGT effective May 31, 2012. (Doc. 61 at ¶ 10). On June 19, 2012, Mr. Briscoe died. (*Id.* at ¶ 11). Plaintiff was thereafter appointed independent administratix of her husband's estate, and she corresponded with MetLife[5] to obtain benefits under the life insurance

---

[3] This document is referred to as the "Stipulated Facts Agreement." The factual background set forth in this section is gleaned from the Stipulated Facts Agreement submitted jointly by the parties.

[4] The Stipulated Facts Agreement states that "the documents bates stamped M-0001 through M-0079 comprise the Plan Document and the only [Summary Plan Description] for the benefits payable under the policy of insurance issued by MetLife for the FGT Plan." (Doc. 61 at ¶ 23). These pages are contained in the record in Doc. 75-2 through Doc. 75-5, and they reference a document titled "CERTIFICATE OF INSURANCE," which states that "[t]his certificate of insurance is issued to You under a Group Policy and it includes the terms and provisions of the Group Policy that describe Your insurance." (Doc. 75-2 at p. 3). The parties have relied upon this document in their respective motions.

[5] Plaintiff filed a complaint against MetLife with the Louisiana Department of Insurance when her initial efforts to recover benefits were unsuccessful. (Doc. 77-1 at pp. 1—5). In response, MetLife stated that because Mr. Briscoe was covered under a group policy, information was required from his employer in order to process any claim. (Doc. 61 at ¶ 13; Doc. 77-1 at pp. 6—7). Ultimately, Energy Transfer Partners, LP ("ETP") provided Mr. Brisco's employment information, including his

policies her husband obtained from FGT. (*Id.* at ¶¶ 12—16). On July 29, 2013, MetLife wrote Plaintiff and denied her claim under the FGT Plan. (*Id.* at ¶ 14). In a letter dated November 24, 2014, Plaintiff's counsel wrote to MetLife's counsel appealing MetLife's decision to deny Plaintiff's claim. (*Id.* at ¶ 15). MetLife subsequently upheld its prior denial of the claim on March 6, 2015, thereby exhausting Plaintiff's administrative remedies. (Doc. 61 at ¶ 16).

## II.   Procedural History

On June 9, 2014, Plaintiff filed this action in state court, asserting claims for breach of contract and damages. (Doc. 1-1). On July 11, 2014, Defendants removed this action to this Court on the basis of federal question jurisdiction pursuant to § 1132(e) of the Employee Retirement Income Security Act ("ERISA"). (Doc. 1). Thereafter, Plaintiff amended her complaint on August 25, 2014 to allege a claim for benefits under ERISA pursuant to 29 U.S.C. § 1132(a)(1)(B), in addition to a claim for violation of the Louisiana Insurance Code. (Doc. 20 at ¶ 4).

After Plaintiff filed her Amended Complaint, FGT and Defendant Energy Transfer Partners, LP (hereinafter, "ETP") filed a partial motion to dismiss Plaintiff's state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (hereinafter, "Rule") on September 11, 2014.[6] (Doc. 25). Before the Court ruled on the partial

---

termination date with FGT, to MetLife. (Doc. 61 at ¶ 13; Doc. 77-1 at pp 9—18). While the record indicates that ETP is corporately related to FTP and assisted it in processing claims, it is clear that FGT and ETP are distinct entities that offered different life insurance plans issued by different insurance companies to its respective employees. (Doc. 24 at p. 2; Doc. 61 at ¶¶ 2—20; Doc. 74-1 at p. 2; Doc. 77-4 at p. 13; Doc. 77-6 at p. 9). Although the administrative record does not permit the Court to distill the exact relationship between FGT, ETP and, for that matter, Southern Union Company, the Court has ample information to issue this Ruling and Order.

[6] Defendant Hartford Insurance Company joined FGT and ETP's motion. (Doc. 26).

motion to dismiss, the United States Magistrate Judge issued a Scheduling Conference Report which stated that MetLife had "agreed to consider additional information provided by [Plaintiff] and to permit her to exhaust her administrative remedies." (Doc. 33 at p. 1). This Report also indicated that the Magistrate Judge deferred entering a scheduling order pursuant to Rule 16, or entry of an ERISA case scheduling order, until this Court ruled on the then pending partial motion to dismiss. (*Id.*).

On May 8, 2015, the Court granted the partial motion to dismiss. (Docs. 37). After the Court disposed of Defendants' partial motion to dismiss, the United States Magistrate Judge entered a Scheduling Order which directed the parties to file a joint stipulation "of relevant material facts and documents, which shall include a stipulation as to the completeness and accuracy of the administrative record." (Doc. 39 at p. 2). The Scheduling Order further directed the parties to file motions for judgment based on the administrative record and stipulated facts by November 20, 2015. (*Id.*). True to the Scheduling Order, the parties filed the motions *sub judice* pursuant to Rule 56.

## III. Standard of Review

### A. Rule 56

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the

court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal citations omitted). At this stage, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied,* 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.* at 1263.

### B. ERISA

The Court has determined that ERISA governs Plaintiff's claims, (Doc. 37), and the parties have stipulated that the FGT Policy at issue vests MetLife with discretionary authority to determine eligibility of benefits, (Doc. 61 at ¶ 17).

Where, as is the case here, the language of a plan governed by ERISA grants a plan administrator discretionary authority to construe the terms of the plan or determine eligibility for benefits, a plan's eligibility determination must be upheld by a court unless it is found to be an abuse of discretion. *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 111 (2008) (citing *Firestone Tire & Rubber Co.,* 489 U.S. 101, 111, 115 (1989)). The abuse of discretion standard extends to both factual determinations

made by the plan administrator during the course of a benefits review and any legal interpretations of the plan itself. *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 841 (5th Cir. 2013); *Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 213 (5th Cir. 1999).

In the ERISA context, "[a]buse of discretion review is synonymous with arbitrary and capricious review." *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009) (citing *Meditrust*, 168 F.3d at 214). This standard requires only that substantial evidence support the plan fiduciary's decision. *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (citing *Meditrust Fin. Servs. Corp.*, 168 F.3d at 215). Moreover, the Court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end." *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999)) (en banc) (overruled on other grounds).

Where, as here, the insurance carrier is also the claims administrator, an inherent conflict of interests exists. Following the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, however, the Fifth Circuit joined the majority of the other circuits in repudiating the application of a "sliding scale" standard of review of discretionary plan determinations where a possible conflict exists, and adopted the unitary abuse of discretion standard, weighing any conflict as a factor in that determination. *Holland*, 576 F.3d at 247 n.3 (5th Cir. 2009). A reviewing court may give more weight to a conflict of interest where the circumstances surrounding the plan administrator's decision suggest "procedural unreasonableness." *Crowell v. CIGNA Group Ins.*, 410 F. App'x 788, 793–94 (5th Cir. 2011) (quoting *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010) (citations and internal quotation marks omitted).

## IV.    Discussion

Plaintiff's Amended Complaint asserts an ERISA claim against Defendants pursuant to 29 U.S.C. § 1132(a)(1)(B).[7] Plaintiff and Defendants have filed cross motions for summary judgment based upon the administrative record in this case,

---

[7] 29 U.S.C. § 1132(a) provides in pertinent part:

> A civil action may be brought—
>
> (1) by a participant or beneficiary—
> * * *
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> * * *
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief....

which Plaintiff stipulates was produced in full by MetLife and Hartford Insurance

Company (hereinafter, "Hartford"). (Doc. 61 at ¶¶ 22—23).

### A. FTP and ETP's Motion for Summary Judgment

FGT and ETP jointly assert that it is an undisputed fact that the life insurance

benefits provided by the FGT Plan were insured under a policy issued by MetLife.

(Doc. 79-1 at ¶¶ 1—2; Doc. 61 at ¶ 6). FGT and ETP also assert that it is an

undisputed fact that MetLife had discretionary authority to interpret the terms of

the FGT Plan and determine eligibility and entitlement to FGT Plan benefits. (Doc.

61 at ¶ 17; Doc. 77-1 at p. 26; Doc. 79-1 at ¶ 4). In response to FGT and ETP's motion,

Plaintiff concedes that FGT and ETP "are not liable for benefits under the [FGT Plan],

which was funded with a policy issued by MetLife." (Doc. 83 at p. 1).

The Fifth Circuit has recently instructed that:

> An ERISA claimant may bring a lawsuit under 29 U.S.C. §
> 1132(a)(1)(B) "to recover benefits due to him under the
> terms of his plan." *Schadler v. Anthem Life Ins. Co.,* 147
> F.3d 388, 394 (5th Cir. 1998). This court has found that a
> claimant **may bring a suit against an employer when
> the plan has no meaningful existence apart from the
> employer, and when the employer made the decision
> to deny benefits**. *Musmeci v. Schwegmann Giant Super
> Markets, Inc.,* 332 F.3d 339, 349–50 (5th Cir. 2003).

*LifeCare Mgmt. Servs. LLC*, 703 F.3d at 843 (internal footnotes omitted) (emphasis

added). Thus, FGT's status as a plan administrator is not sufficient to create liability

under 1132(a)(1)(B) absent some responsibility on its part for the denial of benefits

to Plaintiff. *Id*. at 843—45. The Court finds that the administrative record is clear

that FGT, as Mr. Briscoe's employer, was divorced from MetLife's decision to deny

eligibility of benefits in this case. (Doc. 75-4 at pp. 22—24; Doc. 75-5 at pp. 1—2; Doc.

8

77-1 at pp. 12—26; Doc. 77-2 at p. 1; Doc. 77-6 at pp. 10—14). It was MetLife that made that decision after it reviewed basic employment records provided by ETP and interpreted the FGT Plan. (*Id.*). Because this is not a case where an ERISA plan "has no meaningful existence apart from the employer" or where "the employer made the decision to deny benefits," summary judgment in favor of FGT is appropriate on Plaintiff's 29 U.S.C. § 1132(a)(1)(B) claim against it. *LifeCare Mgmt. Servs. LLC*, 703 F.3d at 843. For this same reason, ETP's tangential involvement in assisting FTP to administer Plaintiff's claim is insufficient to impute liability on it pursuant to 29 U.S.C. § 1132(a)(1)(B).

### B. Hartford's Motion for Summary Judgment

Hartford asserts that Mr. Briscoe was an employee of FGT and not ETP, and therefore Plaintiff "does not have a legal cause of action or viable legal claim for relief against [it] for benefits under an insurance policy in which her husband was not an eligible participant and in which he did not enroll or participate." (Doc. 76-2 at pp. 9—10). It is axiomatic that Plaintiff cannot seek unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) under a life insurance plan for which her husband could not, by its very terms, have been a participant. *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394 (5th Cir. 1998) (An ERISA claimant may bring a lawsuit under 29 U.S.C. § 1132(a)(1)(B) "to recover benefits due to him under the terms of **his plan**") (emphasis added). Because Plaintiff has not otherwise provided a factual basis for demonstrating that her husband worked for ETP and was a participant of any ETP

plan issued by Hartford, summary judgment in favor of Hartford is appropriate on Plaintiff's 29 U.S.C. § 1132(a)(1)(B) claim against it.

### C. Plaintiff and Metropolitan's Motions for Summary Judgment

Plaintiff and MetLife disagree over the proper interpretation of the FGT Plan,[8] and each party asserts that its reading of the plan entitles it to summary judgment on the claim made pursuant to 29 U.S.C. § 1132(a)(1)(B). (Doc. 74-1 at pp. 10—14; Doc. 75-1 at pp. 12—19). The parties' dueling interpretations of the FGT Plan reduce down to what date marked the beginning of a 31 day window under which Mr. Briscoe's life insurance policies remained in effect after his termination from FGT. (*Id.*).

### 1. *Language of the FGT Plan*

The FGT Plan provided that a participant's basic and supplemental life insurance would end the earliest of:

> **for all coverages**
> 1. the date the Group Policy ends; or
> 2. the date insurance ends for Your class; or
> 3. the end of the period for which the last premium has been paid for You; or
> **for Basic Life Insurance**
> 4. The date Your employment ends; Your employment will end if You cease to be Actively at Work in any eligible class, except as stated in the section entitled CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT; or . . .
> **for Supplemental Life Insurance**
> 6. The date Your employment ends; Your employment will end if You cease to be Actively at Work in any eligible class, except as stated in the section entitled CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT . . .

---

[8] Navigating the FGT Plan is like wading through James Joyce's odyssey *Ulysses*. While its terms are not unclear, the constant need to cross reference pages creates confusion and results in reading sections in isolation.

(Doc. 75-1 at p. 4; Doc. 75-3 at p. 13). Actively at Work was defined earlier in a

"DEFINITIONS" section of the FGT Plan as follows:

> Actively at Work or Active Work means that You are performing all of the usual and customary duties of Your job on a Full-Time or Part-Time basis. This must be done at:
> - the Policyholder's place of business;
> - an alternate place approved by the Policyholder; or
> - a place to which the Policyholder's business requires You to travel.
> You will be considered Actively at Work during weekends or Policyholder approved vacations, holidays or business closures if you were Actively at Work on the last scheduled work day preceding such time off.

(Doc. 75-3 at p. 7). The "CONTINUATION" section of the FGT Plan, referenced above,

provided that a participant could choose to "port" his supplemental life insurance.

(Doc. 75-2 at pp. 24—25). The FGT Plan further provided that "If You die within 31

days of the date Portability Eligible Life Insurance ends and an application to Port is

not received by Us during such period, We will determine whether Your life insurance

qualifies for payment." (Doc. 75-3 at p. 21). Basic life insurance under the FGT Plan

was not portable, but could instead be "converted." (Doc. 75-4 at p. 5). The FGT Plan

required a participant to convert his life insurance policy within 31 days after the

date such insurance ended. (*Id.*). The FGT Plan related to basic life insurance

provided that "If You die within 31 days after Your life insurance ends or is reduced

by an amount You are entitled to convert, Proof of Your death must be sent to Us.

When we receive such Proof with the claim, We will review the claim and if we

approve it will pay the Beneficiary." (Doc. 75-4 at p. 6).

11

2. *Did MetLife abuse its discretion in interpreting the FGT Plan?*

The Stipulated Facts Agreement states that Mr. Briscoe died on June 19, 2012, which was more than 31 days after his last day of physically doing work.[9] (Doc. 61 at ¶ 11; Doc. 75-1 at pp. 4, 16—17). Because it retained discretionary authority to interpret the FGT Plan and determine eligibility of benefits, MetLife asserts that its decision to deny benefits based upon the date Mr. Briscoe was terminated and ceased doing physical work is subject to an abuse of discretion standard of review. (Doc. 75-1 at pp. 13—14; Doc. 77-6 at pp. 12—14). MetLife further asserts that it made a reasonable determination that coverage under the FGT Plan expired because: 1) Mr. Briscoe died more than 31 days after the date his basic and supplemental life insurance ended, measured from the date of his termination, and 2) Mr. Briscoe did not request to convert or port his policies before he died. (Doc. 75-1 at pp. 16—19; Doc. 77-1 at p. 26; Doc. 77-2 at p. 1; Doc. Doc. 77-6 at pp. 12—14).

Plaintiff counters that her husband's accrued vacation time should extend the 31 day coverage window as a consequence of the how the term "Actively at Work" is defined in the FGT Plan. (Doc. 74-1 at p. 1—14; Doc. 75-3 at p. 7). Both the basic and supplemental life insurance coverage at issue provided 31 days of additional coverage from the date the policies ended. The policies both ended on the date Mr. Briscoe's employment ended, subject to what Plaintiff views as the immediate qualification that his employment would end when he "ceased to be Actively at Work . . . ." Plaintiff

---

[9] Again, Mr. Briscoe's last day of physically doing work was Wednesday, May 16, 2012, which was the date he was involuntarily terminated. (Doc. 61 at ¶ 8). 31 days after this date was Saturday, June 16, 2012. The parties agree that Mr. Briscoe was paid for 30.67 hours of vacation pay. (*Id.* at ¶ 9).

asserts that incorporation of the term "Actively at Work" into the description of when supplemental and basic life insurance ended is fatal to MetLife's interpretation of the FGT Plan, because it ignores the definition of the term. By its definition, the term "Actively at Work" included holidays, weekends, and policyholder approved vacation. (Doc. 75-3 at p. 7). When his accrued vacation time is added to the last day of his termination date, Plaintiff asserts that her husband died within the 31 day coverage window that was previously described.

Plaintiff further directs the Court's attention to the parties' stipulation that documents in the administrative record "comprise the Plan Document and the only [Summary Plan Description] for the benefits payable under the policy of insurance issued by MetLife for the FGT Plan." (Doc. 61-1 at ¶ 23; Doc. 74-1 at pp. 9—10; Doc. 104 at pp. 1—2).[10] Thus, Plaintiff asserts that the FGT Plan contains no separate summary plan description and cites *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 188—90 (citing *CIGNA Corp.* v. *Amara*, 563 U.S. 421 (2011)) (noting that it is "curious" to use identical language in both a plan and a plan summary) for the proposition that the Court must resolve any ambiguity in the FGT Plan against MetLife.[11] (Doc. 74-1 at pp. 9—10; Doc. 104 at pp. 1—2).

To evaluate whether MetLife's interpretation of the FGT Plan was legally correct, the Fifth Circuit has instructed district courts to consider: "(1) whether the

---

[10] *See* note 4, *supra*.

[11] In *Koehler*, the insurer retained discretion to interpret the terms of an ERISA plan. The Fifth Circuit applied an abuse of discretion standard of review to the insurer's interpretation of the plan, *id*. at 187, and it also determined that it was required to resolve ambiguities in the plan against the insurer, because the plan used identical language in both the plan and the plan summary. *Id*. at 188—90.

administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d at 841 (quoting *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008)). "[W]hether the administrator gave the plan a fair reading is the most important factor." *Id.* (quoting *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 260 (5th Cir. 2009)). "An administrator's interpretation is consistent with a fair reading of the plan if it construes the plan according to the 'plain meaning of the plan language.'" *Id.* (quoting *Threadgill v. Prudential Sec. Grp., Inc.*, 145 F.3d 286, 292 (5th Cir.1998)).

If the Court finds that an administrator's interpretation of a plan is incorrect, the Court must then determine whether the interpretation was an abuse of discretion. *Id.* (citing *Chacko v. Sabre, Inc.*, 473 F.3d 604, 611 (5th Cir. 2006). The Fifth Circuit has further instructed:

> A plan administrator abuses its discretion "[w]ithout some concrete evidence in the administrative record that supports the denial of the claim." Abuse of discretion factors include: "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." However, "if an administrator interprets an ERISA plan in a manner that directly contradicts the plain meaning of the plan language, the administrator has abused his discretion even if there is neither evidence of bad faith nor of a violation of any relevant administrative regulations."

(*Id.*) (internal citations omitted).

Applying this legal framework and ordinary principles of contractual interpretation, the Court finds that (1) the FGT Plan does not have ambiguous terms, (2) Metlife's interpretation of the plan was correct, and (3) to the extent the FGT Plan was subject to conflicting interpretations despite its unambiguous terms, MetLife did not abuse its discretion in denying coverage based on the date of Mr. Briscoe's termination. MetLife's denial of benefits was based on a fair reading of the FGT Plan's terms and was consistent with a uniform construction of its language. (Doc. 77-1 at p. 26; Doc. 77-2 at p. 1). MetLife's determination concluded, in effect, that Mr. Briscoe's paid vacation time did not change the date his employment ended, because it only amounted to additional pay for work already done. *See In Monroe v. Penn-Dixie Cement Corporation*, 335 F. Supp. 231 (N.D. Ga. 1971) (reaching the same conclusion in a non-ERISA labor dispute).

In support of MetLife's interpretation, the Court recognizes that provisions in both the basic and supplemental life insurance sections of the FGT Plan stated that coverage would end "The date Your employment ends; . . . ." Use of the semicolon to separate reference to the term "Actively at Work" lends to a fair reading that an involuntary discharge would end employment independent of any consideration of weekends, holidays, or accrued vacation time. Put differently, a plan participant's employment could end on the date of involuntary termination *or* when he ceased to be Actively at Work as defined by that term. Furthermore, the term "Actively at Work" contains the following description: "Actively at Work or Active work means that You are performing all of the usual and customary duties of Your job on a Full-

15

Time or Part-Time basis." A terminated employee cannot perform his duties on a part-time or full-time basis and cannot return to work, even if they have accrued vacation time. Because MetLife gave the FGT Plan a fair reading and did not abuse its discretion, the Court finds that summary judgment in favor of MetLife is appropriate on Plaintiff's 29 U.S.C. § 1132(a)(1)(B) claim against it.

### D. Plaintiff's claims for breach of fiduciary duties and ERISA estoppel

Plaintiff's Amended Complaint asserts state law claims, which have since been dismissed, and a claim for relief pursuant to 29 U.S.C. § 1132(a)(1)(B), which has now been resolved. (Doc. 20 at ¶¶ 18, 26; Doc. 37). Plaintiff nonetheless raises equitable relief claims pursuant to 29 U.S.C. § 1132(a)(3) and an ERISA estoppel claim in her motion for summary judgment and responses to Defendants' motions for summary judgment. (Doc. 74 at p. 1; Doc. 74-1 at pp. 1, 14—19; Doc. 82 at pp. 4—8; Doc. 83; Doc. 104 at pp. 12—13). While Plaintiff has sought leave of court to add these claims by way of a second amended complaint, this request has not been granted, and it has been opposed by each Defendant. (Docs. 42, 49, 51, 58). Plaintiff maintains, however, that her Amended Complaint was sufficient to notify Defendants of these additional claims, and they should therefore be considered by the Court. (Doc. 83 at pp. 3—4).

To the extent the Amended Complaint sufficiently raises such additional claims, Plaintiff is prohibited from asserting duplicative claims under section 1132(a)(3), because she had "adequate redress for disavowed claims through [her] right to bring suit pursuant to section 1132(a)(1)." *Hollingshead v. Aetna Health Inc.*, 589 Fed. App'x 732, 737 (5th Cir. 2014) (per curiam) (finding that rejection of a

plaintiff's claim under § 1132(a)(1) does not make an alternative claim under § 1132(a)(3) viable); *Tolson v. Avondale Indus.*, 141 F.3d 604, 610 (5th Cir. 1998). Put differently, Plaintiff's additional claims pursuant to § 1132(a)(3) can go nowhere because they essentially seek monetary relief for wrongly denied benefits under the FGT Plan. *See Horne v. J.C. Penney Corp.*, No. 14-cv-2383, 2014 WL 6060434, at *4 (W.D. La. Nov. 12, 2014) (finding that a plaintiff in an ERISA action was "forbidden from bringing [a] breach of fiduciary duty claim under Section 1132(a)(3) because the basis of the claim [was] simply the denial of benefits, and Plaintiff ha[d] a remedy available for that under Section 1132(a)(1)(B)"). And even if Plaintiff can maintain her claims under both § 1132(a)(1) and § 1132(a)(3), her assertion that Defendants breached their fiduciary duties by, *inter alia*, delaying the claims process through misdirection and withholding notice of her husband's right to port his life insurance is unavailing for three reasons. (Doc. 74-1 at pp. 13—20).

First, Mr. Briscoe was not an employee of ETP and could not be a participant of the ETP Plan.[12] Accordingly, the Court cannot conclude that Plaintiff has any cognizable claim under ERISA against Hartford by virtue of any communication it mistakenly had with Plaintiff. Second, and more importantly, Plaintiff has not drawn the Court's attention to any provision in the FGT Plan that required post-termination notices be given to participants regarding the option to port or convert life insurance. (Doc. 75-3 at p. 20; Doc. 75-4 at pp. 5—10) (relative to the option to port, the FGT Plan reads in pertinent part: "If written notice of the option to Port is not given within

---

[12] *See* Sections IV. A, B, *supra*.

91 days of the date such insurance ends, the Request Period: beings the date the insurance ends, and expires at the end of such 91 day period"). Plaintiff has also not identified any ERISA provision that requires such notice. Third, assuming *arguendo* that Plaintiff should have timely received such notice, Plaintiff has offered no persuasive authority for the proposition that *she* had the right to exercise her husband's contractual option to extend coverage after his death simply by virtue of her status as the administratix of his estate.

The sole case relied upon by Plaintiff for this contention is *James v. La. Laborers Health and Welfare Fund*, 766 F. Supp. 530 (E.D. La. 1991). Yet Plaintiff's reliance on this case does not withstand scrutiny. *James* concerned a succession representative's effort to recover unpaid medical benefits under an ERISA plan that were incurred prior to the participant's death. *Id*. (discussing *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286 (5th Cir. 1988), wherein the Fifth Circuit held that participants and beneficiaries could assign their health care benefits and confer derivative standing on the assignee). This case is easily distinguishable. Plaintiff would have the Court find that ERISA permitted her to exercise her husband's contractual option to convert or port life insurance coverage—as opposed to allowing her to recover unpaid benefits *already incurred*—under a group policy after his death. The Court finds no authority to sanction such a finding. Thus, the gravamen of Plaintiff's § 1132(a)(3) claim—that she was stymied in her effort to extend her late husband's coverage—is without merit.

Based upon this finding, the Court also concludes that Plaintiff has not demonstrated any material misrepresentation upon which she reasonably relied to her detriment that would support an ERISA estoppel claim. *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444 (5th Cir.2005) (explicitly adopting ERISA estoppel as a cognizable theory of recovery that requires a plaintiff to establish: "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances"). Plaintiff was not prejudiced by any withheld notice, because she could not port or convert her husband's policies after his death *ab initio*. And because Plaintiff has otherwise been afforded a full and complete administrative review process, any harm she suffered from FGT's initial failure to timely provide Mr. Briscoe's employment documents to MetLife has been satisfactorily addressed. For these reasons, permitting Plaintiff to again amend her complaint would be "futile and frivolous."[13] *Hollingshead*, 589 Fed. App'x at 737.

---

[13] The court also notes that Plaintiff sought leave to file her second amended complaint on September 7, 2015, which was less than three months before the dispositive motion deadline and more than one year after this case was removed to federal court. Plaintiff did not identify any new underlying facts that were not known to her when the Amended Complaint was filed, and the new claims are based on identical, known facts that underlie her Amended Complaint. Accordingly, while the Court need not reach the issue, it is also inclined to find that Plaintiff did not act diligently and that allowing another amended complaint is not warranted. *Matter of Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996).

V.    Conclusion

For the foregoing reasons:

**IT IS ORDERED** that Plaintiff Tammy Briscoe's **Motion for Judgment on Administrative Record and Stipulated Facts (Doc. 74)** is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Metropolitan Life Insurance Company's **Motion for Judgment on the Administrate Record (Doc. 75)** is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Hartford Life Insurance Company's **Motion for Judgment Based on the Administrative Record and Summary Judgment (Doc. 76)** is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Energy Transfer Partners, LP, and Defendant Florida Gas Transmission Company, LLC's **Motion for Summary Judgment and, alternatively, for Judgment on the Administrative Record (Doc. 79)** is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Tammy Briscoe's **Motion for Leave to file Second Amended and Supplemental Petition (Doc. 42)** is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Tammy Briscoe's **Motion to Reset Deadlines by 60 Days (Doc. 43)** and **Motion to Conduct Discovery (Doc. 44)** are hereby **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff Tammy Briscoe file a brief with the Court, not to exceed ten pages, by April 1, 2016 to explain why Defendant Southern Union Company should not be dismissed in light of this Ruling and Order or for failure to prosecute under Local Rule 41(b).

Baton Rouge, Louisiana, this 18th day of March, 2016.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**